**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE ADONI GROUP, INC., | Case No. 14-11841 (REG) |
| Debtor. | |

### FINAL ORDER AUTHORIZING THE PURCHASE AND SALE OF ACCOUNTS AND THE INCURRANCE OF SECURED INDEBTEDNESS PURSUANT TO SECTIONS 363 AND 364(C) OF THE BANKRUPTCY CODE

**WHEREAS,** on June 19, 2014 (the "Petition Date"), an involuntary petition pursuant to Chapter 7 of Title 11, United States Code (the "Bankruptcy Code") was filed against The Adoni Group, Inc. (the "Debtor"); and

**WHEREAS,** on June 25, 2014, the Debtor filed an application, pursuant to Bankruptcy Code § 706(a), to convert its involuntary Chapter 7 case to a voluntary case under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"); and

**WHEREAS,** on June 27, 2014, an order for relief under Chapter 11 of the Bankruptcy Code was entered with respect to the Debtor; and

**WHEREAS,** the Debtor has continued in the management and operation of its business pursuant to Bankruptcy Code §§ 1107 and 1108, and no trustee or examiner has been appointed, in the Chapter 11 Case; and

**WHEREAS,** the Debtor has applied to the Court (the "Application") for authority pursuant to Bankruptcy Code § 363 and § 364(c), to ratify, reaffirm and adopt, as amended, modified and/or supplemented by this Order, its pre-petition secured factoring and financing arrangement with, and sell its post-petition accounts to, and obtain debtor-in-

possession financing from, Capital Business Credit LLC ("Capital"), pursuant to (a) the

Factoring Agreement dated May 16, 2013 (as amended, modified and/or supplemented, the

"Factoring Agreement") and the other agreements entered into further thereto or in

connection therewith, including without limitation security agreements (collectively, the

"Pre-Petition Agreements"), (b) the budget annexed as an exhibit to this Order, the budget

annexed to the Court's prior orders granting the Application on an interim basis, and all and

all extensions thereof agreed to in furtherance thereof (collectively, the "Budget"), and

(c) this Order (collectively, the Pre-Petition Agreements, the Budget, and this Order shall be

referred to hereinafter as the "DIP Factoring Documents"), and

**WHEREAS,** the Debtor has admitted, represented and stipulated to the Court,

without prejudice to the rights of third parties set forth in this Order, the following

(collectively, the "Admissions"):

(a)      pursuant to the Pre-Petition Agreements, the Debtor sold, and Capital

purchased, the Debtor's accounts as valid and true purchases and sales thereof;

(b)      pursuant to the Pre-Petition Agreements, Capital made loans,

advances and other financial accommodations to or for the benefit of the Debtor;

(c)      as of the Petition Date, (1) the Debtor was indebted to Capital, without

defense, counterclaim, recoupment or offset of any kind, in the approximate amount

of $5,800,000, plus pre-petition interest, fees, expenses, and other amounts properly

chargeable under the Pre-Petition Agreements, in respect of loans, advances and

other financial accommodations made by Capital to the Debtor (the "Pre-Petition

Obligations"), and (2) the Pre-Petition Obligations were secured by valid,

enforceable, properly perfected, and unavoidable first priority liens on and security

interests in certain assets of the Debtor, including without limitation accounts, general intangibles, and inventory (as described with specificity in the Pre-Petition Agreements, the "Pre-Petition Collateral");

(d)      Capital is willing to purchase the Debtor's post-petition accounts, and make post-petition loans, advances and other financial accommodations to the Debtor, and to consent to the Debtor's use of the Pre-Petition Collateral and Cash Collateral (as such term is defined in Bankruptcy Code § 363(a)), only upon the conditions contained in this Order;

(e)      the Debtor is unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense necessary to maintain and conduct its business;

(f)      the Debtor is unable to obtain secured credit allowable only under Bankruptcy Code § 364(c)(1) and (c)(2), except under the terms and conditions provided in this Order; and

(g)      the Debtor reasonably and in good faith believes that the use of Cash Collateral and the loans, advances, and other financial accommodations to be obtained pursuant to the DIP Factoring Documents is sufficient to fund all projected legitimate and allowable expenses of its Chapter 11 case from the Petition Date during the period to which the Budget pertains;

and

**WHEREAS,** the Court held interim hearings with respect to the Application on June 27, July 9, and August 6, 2014, and a final hearing with respect to the Application on September 4, 2014; and the Court, having considered the Application and the proceedings

before the Court at the hearings; and all objections, if any, to the relief requested in the Application having been withdrawn, resolved or overruled by the Court as reflected on the record of the hearings;

### THE COURT HEREBY FINDS AND DETERMINES THAT:[1]

(a)    the Debtor has given notice of the relief sought in the Application that is reasonable under the circumstances;

(b)    the Court has core jurisdiction over the Debtor's bankruptcy case, the Application, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;

(c)    it is in the best interest of the Debtor's estate that it be allowed to sell its post-petition accounts to, and obtain post-petition secured financing from, Capital, to use the Pre-Petition Collateral and Cash Collateral, on an interim basis under the terms and conditions set forth herein, as such is necessary to permit the orderly administration of the Debtor's estate;

(d)    the purchase of the Debtor's post-petition accounts, and the extension of credit and financial accommodations, under the DIP Factoring Documents are in good faith, and Capital is entitled to the protections of Bankruptcy Code §§ 363(m) and  364(e);

(e)    good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtor's estate;

---

[1] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      The Application is granted.  The Debtor is authorized, pursuant to

Bankruptcy Code § 363 and § 364(c), to sell its post-petition accounts to Capital, which sales

are stipulated by the Debtor to be valid and true sales thereof, and to obtain post-petition

secured financing from Capital in accordance with the Budget (which shall control for such

purpose notwithstanding the advance rates set forth in the Factoring Agreement) and such

extensions or modifications thereto as may be agreed to by the Debtor and Capital, on

reasonable notice to and consultation with the Committee and filed with the Court, and to

use the Pre-Petition Collateral, Cash Collateral, and the proceeds and products thereof,

pursuant to the terms and conditions of the DIP Factoring Documents, provided, however,

that other than with respect to the Carve-Out, all post-petition advances by Capital shall be

on a discretionary basis.

2.      As adequate protection for any post-petition diminution in value of Capital's

interests in the Pre-Petition Collateral, including without limitation that caused by the

Debtor's use of Cash Collateral, Capital is hereby granted a post-petition claim (the

"Adequate Protection Claim") against the Debtor's estate.

3.      Pursuant to Bankruptcy Code § 363 and § 364(c), the Adequate Protection

Claim and any and all post-petition Obligations, as such term is defined in the Pre-Petition

Agreements, of the Debtor to Capital pursuant to the DIP Factoring Documents

(collectively, the "Post-Petition Claim") shall be allowed administrative expenses of the

Debtor's estate, which shall have priority in payment over any other indebtedness and/or

obligations now in existence or incurred hereafter by the Debtor and over all administrative

expenses or charges against property arising in the Debtor's bankruptcy case, including

without limitation those specified in Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 or 1114, subject only to the Carve-Out, provided that the Post-Petition Claim shall not be payable from the following (collectively, the "Excluded Assets") (i) causes of action brought pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 550, 553, and 724(a) (collectively, the "Avoidance Actions"), and breach of fiduciary duty and other estate claims against the Debtor's insiders, including Jay Adoni, (ii) any Challenge (as such term is defined below), and (iii) the proceeds thereof and recoveries thereon.  The time of payment of the Post-Petition Claim shall not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered.

4.      Pursuant to Bankruptcy Code § 363 and 364(c), as security for the Post-Petition Claim, the Debtor is hereby authorized to and is hereby deemed to grant to Capital a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien," and as so granted to Capital, the "Post-Petition Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "Collateral", and to the extent created, acquired or arising after the Petition Date, the "Post-Petition Collateral").  Notwithstanding the foregoing, the Collateral shall not include the Excluded Assets.

5.      The Post-Petition Lien shall have the following priority with respect to the Collateral:

(a)    pursuant to Bankruptcy Code § 364(c)(2), first priority as to (1) all Pre-Petition Collateral that as of the Petition Date was not subject to (A) valid, enforceable, properly perfected, and unavoidable Liens or (B) valid, enforceable, and unavoidable Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted by Bankruptcy Code § 546(b), and (2) all Post-Petition Collateral;

(b)    pursuant to Bankruptcy Code § 364(c)(3), junior priority as to all Pre-Petition Collateral that as of the Petition Date was subject to valid, enforceable, properly perfected, and unavoidable Liens, or was subject to valid, enforceable, and unavoidable Liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted by Bankruptcy Code § 546(b) (collectively, "Senior Third Party Liens");

(c)    the Post-Petition Lien shall not be subject or subordinate to (1) any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtor's estate under Bankruptcy Code § 551, or (2) any Lien arising after the Petition Date, including without limitation any Lien granted in favor of any governmental unit (including any regulatory body of any governmental unit or otherwise), board, commission, or court, for any liability of the Debtor;

(d)    Capital shall not be subject to the "equities of the case" exception of Bankruptcy Code § 552(b) with respect to any Collateral;

(e)    Capital having represented to the Committee that the guaranty with respect to the Debtor's indebtedness and obligations to Capital given by the Debtor's principal Jay Adoni is an unsecured guaranty, Capital shall not be subject to the

equitable doctrines of "marshaling" or any similar claim or doctrine with respect to any Collateral.

6.      The automatic stay provisions of Bankruptcy Code § 362 are hereby modified to permit (a) the Debtor to implement and perform the terms of this Order, and (b) the Debtor to create, and Capital to perfect, the Post-Petition Lien and any other Liens granted hereunder.  The Debtor and Capital shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect the Post-Petition Lien, or to file UCC financing statements or other instruments with any other filing authority or take any other action to perfect the Post-Petition Lien, which shall be and is deemed valid, binding, enforceable and automatically perfected by the docket entry of this Order by the Clerk of this Court.  If, however, Capital in its sole and absolute discretion shall elect for any reason to enter into, file, record or serve any such financing statements or other documents with respect to the Post-Petition Lien, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Order by the Clerk of the Court. Capital is hereby relieved of any requirement to file proofs of claim in the Debtor's bankruptcy case with respect to the Post-Petition Claim and/or the Post-Petition Lien, but may in its sole and absolute discretion file any such proof of claim.

7.      Notwithstanding Capital's pre-petition and post-petition claims and Liens, the Debtor may use the Collateral, including Cash Collateral, to pay (the following subparagraphs, collectively, the "Carve-Out"):

(a)      the statutory fees of the United States Trustee pursuant to 28 U.S.C.

§ 1930(a) and any unpaid fees due and owing to the Clerk of the Court (collectively,

the "Statutory Fees"); and

(b)      the allowed fees and expenses of the professionals retained by the

Debtor and by any Official Committee of Unsecured Creditors (the "Committee"),

whose retentions are approved pursuant to final orders of the Court (the "Chapter 11

Professionals") subject to the limitations on the use of such funds set forth in this

Order, (1) with respect to the Committee's Chapter 11 Professionals, in the aggregate

amount of $25,000, and (2) with respect to the Debtor's Chapter 11 Professionals, in

such amounts as are set forth in the Budget,;

(c)      the allowed fees and expenses of any Chapter 7 Trustee under

Bankruptcy Code § 726(b), including without limitation the allowed fees and

expenses of the professionals retained by the Chapter 7 Trustee and approved by final

orders of the Court (the "Chapter 7 Professionals", and together with the Chapter 11

Professionals, the "Professionals"), in aggregate amount not to exceed $10,000.

Any amounts paid from the Collateral or the proceeds thereof, or funded by Capital, with

respect to the Carve-Out shall be afforded Post-Petition Claim status and shall be secured by

the Post-Petition Lien.

8.      The Debtor shall maintain the retention of a Chief Restructuring Officer (the

"CRO"), reasonably satisfactory to Capital, with primary authority and responsibility to

operate the Debtor's business in the Chapter 11 Case pursuant to the Budget, and to

negotiate and enter into agreements on behalf of the Debtor with respect to Dispositions.

The CRO shall otherwise have powers and authority consistent with that vested in the

officers of a corporation under applicable non-bankruptcy law.  The fiduciary duties of the CRO shall run solely to the Debtor's estate and the CRO shall have no obligation to act at Capital's direction.

9.      Effective as of the time of commencement of the Debtor's bankruptcy case on the Petition Date:

(a)     the Debtor waives irrevocably all claims and rights, if any, it might otherwise assert against the Collateral pursuant to Bankruptcy Code §§ 506(c) or 552(b);

(b)     except from and pursuant to the terms of the Carve-Out, no entity in the course of the Debtor's bankruptcy case shall be permitted to recover from the Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtor or the Debtor's estate) any cost or expense of preservation or disposition of the Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code § 506(c); and

(c)     no entity shall be permitted to recover from the Collateral, or assert against Capital, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy case, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget.

10.     So long as the Pre-Petition Obligations or the Post-Petition Claim (collectively, the "Obligations") remain outstanding, unless consented to in writing by Capital, the Debtor shall not seek entry of any further orders in the Chapter 11 Case which authorize (a) under Bankruptcy Code § 363, the use of Cash Collateral in which Capital has an interest, (b) the obtaining of credit or the incurring of indebtedness pursuant to

Bankruptcy Code §§ 364(c) or 364(d) (unless such credit shall be used to repay the Obligations in full), or (c) any other grant of rights against the Debtor and/or its estate, secured by a Lien in the Collateral or entitled to priority administrative status which is equal or superior to that respectively granted to the Post-Petition Claim or the Post-Petition Lien.

11.    In addition to the fees, costs, charges and expenses authorized under the Pre-Petition Agreements, the Debtor shall pay in accordance with the procedures set forth in the following sentences, as allowed post-petition administrative expenses afforded Post-Petition Claim status secured by the Post-Petition Lien, the reasonable fees and reimbursable expenses of Capital's attorneys, financial advisors, consultants, and other retained professionals, arising from or related to:

(a)    this Order, including without limitation the negotiating, closing, documenting and obtaining of Court approval thereof;

(b)    all proceedings in connection with any Disposition (as such term is defined below);

(c)    all proceedings in connection with the interpretation, amendment, modification, enforcement, enforceability, validity or implementation of the Pre-Petition Agreements or this Order at any time;

(d)    defending any Challenge (as such term is defined below) or responding to any Bankruptcy Rule 2004 or other investigation brought with respect to any prospective Challenge;

(e)    all other matters and proceedings arising in or related to the Debtor's bankruptcy case; and

(f)     all reasonable expenses, costs and charges in any way or respect

arising in connection with the foregoing (collectively, the "Capital Expenses").

12.     Capital may seek payment of any Capital Expenses by written request (the

"Fee Request") to counsel to the Debtor, the Committee's and the U.S. Trustee's respective

counsel, accompanied by copies of appropriate invoices for such Capital Expenses, which

invoices (1) shall be subject to redaction against disclosure of privileged or confidential

information, (2) with respect to Capital's attorneys, shall include attorney time records

showing the number of hours billed and a reasonably detailed description of the services

provided and expenses incurred, subject to redaction against the disclosure of privileged or

confidential information, but (3) shall not be subject to U.S. Trustee guidelines or other

guidelines, local rules, or procedures as are applicable to professionals retained by the

Debtor, the Committee, or other estate fiduciaries.  The parties to whose counsel Fee

Requests are given shall have seven calendar days from the date of the Fee Request to file

with this Court, and serve upon Capital, appropriate pleadings objecting to the payment of

any amount set forth in a Fee Request.  Any amount set forth in a Fee Request not timely

objected to shall be paid by the Debtor provided that the Debtor have sufficient available

cash, or in Capital's sole and absolute discretion charged to the Debtor's account.  Any

amount set forth in a Fee Request timely objected to shall be paid by the Debtor or charged

to the Debtor's account as and when such objection is determined by final order of the

Court or otherwise agreed to by the parties.

13.    Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a)    the Court enters an order authorizing the sale of all or substantially all assets of the Debtor that does not provide for the payment in full of the Obligations in cash upon the closing of the sale, unless otherwise agreed by Capital in its sole and absolute discretion;

(b)    the Court enters an order, the effect of which has not been stayed, granting relief from the automatic stay to a third party with respect to material assets of the Debtor's estate, unless Capital has given prior written consent to such relief;

(c)    the Debtor ceases operations of its present business or takes any material action for the purpose of effecting the foregoing without the prior written consent of Capital, except to the extent contemplated by the Budget;

(d)    the Chapter 11 Case is either dismissed or converted to a Chapter 7 case pursuant to an order of the Court, the effect of which has not been stayed;

(e)    a Chapter 11 trustee, or an examiner with materially expanded powers beyond those set forth in Bankruptcy Code §§ 1106(a)(3) and 1106(a)(4), or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed, in the Chapter 11 Case;

(f)    this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of Capital, materially and adversely affect the rights of Capital hereunder or shall materially and adversely affect the priority of any or all of the Obligations or Capital's Liens;

- 13 -

(g)     the occurrence subsequent to the Petition Date of an Event of Default

under the Pre-Petition Agreements (1) not existing as of the Petition Date, or

(2) other than any Event of Default occurring and/or existing solely because of

(A) the commencement of the Debtor's bankruptcy case on the Petition Date, (B) the

continuance of the automatic stay to the extent not vacated by this Order, and/or

(C) the breach of any financial covenant set forth in the Pre-Petition Agreements.

(h)     (1) the Debtor expends any funds or monies for any purpose other than

those set forth on the Budget, (2) the Debtor expends any funds or monies in excess

of the amounts authorized in the Budget, provided that for the cumulative Budget

periods which have occurred the Debtor's actual cash disbursements may be up to

ten percent (10%) more than the cumulative budgeted amount for cash

disbursements through the conclusion of such Budget periods without such

expenditures constituting an Event of Default, (3) the Debtor fails to achieve

revenues of at least ninety percent (90%) of the revenue projections set forth in the

Budget for the cumulative Budget periods which have occurred, tested weekly

thereafter on a four week trailing basis, or (4) the Debtor fail to maintain inventory,

sales, and receivables levels of at least ninety percent (90%) of the levels reflected in

the Budget, tested monthly as of the last business day of each month;

(i)     the occurrence of a material adverse change from and after the Petition

Date, except to the extent contemplated by the Budget, including without limitation

any such occurrence resulting from the entry of any order of the Court, in each case

as determined by Capital in its reasonable discretion, in (1) the condition (financial

or otherwise), operations, assets, business or business prospects of the Debtor, (2) the

Debtor's ability to repay the Obligations, and/or (3) the value of the Collateral;

(j)      any material misrepresentation by the Debtor in any financial

reporting or certifications to be provided by the Debtor to Capital;

(k)      non-compliance or default by the Debtor with any of the terms and

provisions of this Order; provided, however, that said non-compliance or default

shall not be deemed an Event of Default if curable and cured by the Debtor within

three business days after notice of such non-compliance or default is given to the

Debtor by Capital.

14.    Upon the occurrence of an Event of Default and the giving written notice

thereof by Capital to counsel to the Debtor, the Committee and the U.S. Trustee (which

notice may be given by any manner of electronic transmission, the automatic stay being

deemed lifted for such purpose) (the "Default Notice"), or upon the occurrence of the

Expiration Date:

(a)      Capital shall have the right, free of the restrictions of Bankruptcy Code

§ 362 or under any other section of the Bankruptcy Code or applicable law or rule,

to take immediate reasonable action to protect the Collateral from harm, theft

and/or dissipation;

(b)      Capital shall have no obligation to purchase post-petition accounts

from the Debtor, or make any further loans, advances, or other financial

accommodations to the Debtor;

(c)      with respect to an Event of Default as to which a Default Notice has

been given, the Debtor, the Committee and the U.S. Trustee shall have seven

calendar days from the receipt of the Default Notice (the "Remedy Notice Period")
to obtain an order of the Court on notice to Capital enjoining or restraining Capital
from exercising rights and remedies based upon the Event of Default specified in the
Default Notice ("Restraint on Remedies"), provided that a Restraint on Remedies
may be sought solely on grounds of the non-occurrence or timely cure of the Event of
Default specified in the Default Notice; and

(d)    (1) with respect to an Event of Default as to which a Default Notice
has been given, immediately upon expiration of the Remedy Notice Period, unless a
Restraint on Remedies has timely been obtained from the Court, or (2) immediately
upon the occurrence of the Expiration Date, (A) the payment of any and all
Obligations of the Debtor to Capital shall be due and payable, (B) the Debtor's use of
the Collateral (including without limitation Cash Collateral) pursuant to this Order
and the Budget shall cease, subject to the Carve-Out, (C) Capital shall have the right,
free of the restrictions of Bankruptcy Code § 362 or under any other section of the
Bankruptcy Code, to exercise contractual, legal and equitable rights and remedies as
to all or such part of the Collateral as Capital shall elect, (D) Capital shall have the
right, free of the restrictions of Bankruptcy Code § 362 or any other section of the
Bankruptcy Code, to impose an "administrative freeze" with respect to, and
thereafter set off, the Debtor's cash on deposit at or within Capital's control, and
(E) Capital, should it so elect in its sole and absolute discretion as exercised by the
filing of an appropriate statement with the Court, shall be deemed to have been
granted "peaceful possession" of, and right of access to, all or any portion of the
Collateral, by the Debtor.

15.     The Debtor shall continue to keep the Collateral fully insured against all loss, peril and hazard and make Capital loss payee as its interests appear under such policies. The Debtor shall provide Capital with proof of the foregoing within three business days of written demand and will give Capital reasonable access to its records in this regard.

16.     The Debtor shall provide Capital with such written reports as are required under the Pre-Petition Agreements.  In addition, the Debtor shall provide Capital with such additional written reports as Capital in its reasonable discretion shall require, including without limitation (a) a rolling thirteen week cash flow forecast no later than Wednesday of each week in a form similar to the Budget and (b) a weekly report no later than Wednesday of each week showing the Debtor's actual cash receipts and disbursements for the prior week and the variances between such actual amounts and the amounts set forth in the Budget for such Budget period.  All written reports provided by the Debtor to Capital shall be certified by an officer of the Debtor acceptable to Capital to be accurate to the best of such officer's knowledge, information and belief, and copies of such written reports shall be contemporaneously provided to the Committee.

17.     Capital shall have the right, at any time during the Debtor's normal business hours or as otherwise agreed by the parties, to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtor, and to inspect, audit and monitor all or any part of the Collateral and the Debtor's business premises, and the Debtor shall make all of same reasonably available to Capital and its representatives, and shall cause its personnel and representatives to cooperate with Capital and its representatives, for such purposes. Capital and its representatives may, without Capital being deemed to be in control of, or a

fiduciary for, the Debtor, and without obtaining prior consent from the Debtor, (1) discuss

the Debtor's books and records, the Collateral, the Budget, and the Debtor's business

operations with the Debtor's directors, officers, retained professionals (including without

limitation attorneys, accountants, investment bankers and financial restructuring or workout

advisors and consultants) and employees, and (2) make observations and recommendations

to such persons regarding the Debtor's books and records, the Collateral, the Budget or the

Debtor's business operations.  The foregoing sentences are without prejudice to, and shall

not be deemed a waiver of, the rights of Capital to seek examination of the Debtor pursuant

to Fed. R. Bankr. P. 2004.

18.    For purposes of this Order, (a) "Proceeds" shall mean any and all payments,

proceeds or other consideration realized upon the sale, liquidation, realization, collection or

other manner of disposition of the Collateral, whether in the ordinary course of the Debtor's

businesses (including without limitation accounts, credit card receivables, and other

proceeds arising from the Debtor's sales of goods and/or performance of services) or other

than in the ordinary course of the Debtor's businesses, and (b) "Disposition" shall mean any

sale, liquidation, realization, collection or other manner of disposition of Collateral other

than in the ordinary course of the Debtor's businesses, including without limitation any sale

authorized pursuant to Bankruptcy Code § 363 and/or any plan of reorganization.

19.    From and after the Petition Date, the Debtor shall maintain in full force and

effect the pre-petition clearing, dominion, lockbox and similar accounts maintained by or on

behalf of the Debtor pursuant to the Pre-Petition Agreements for the collection of Proceeds

obtained in the ordinary course of the Debtor's businesses (the "Collection Accounts"), and

the payment procedures under which such accounts are administered (the "Collection

Procedures"), unless otherwise directed by Capital.  Without limitation of the foregoing,

from and after the date of this Order, the Debtor shall continue to remit to Capital such

cash, cash equivalents and checks as are Proceeds obtained in the ordinary course of the

Debtor's businesses to Capital, and/or shall cause customers and account debtors of the

Debtor to remit to Capital such cash, cash equivalents and checks as are such Proceeds to

the Collection Accounts in accordance with the Collection Procedures.  To the extent that

as of the date of this Order, the Debtor maintains custody and/or control of any cash, cash

equivalents or checks that is Cash Collateral, whether in its possession, in bank accounts, in

lockbox accounts or otherwise, other than in the Collection Accounts and in contravention

of the Collection Procedures, then upon entry of this Order the Debtor shall deliver such

cash, cash equivalents or checks, and the proceeds thereof, to Capital.

      20.     The Debtor and any successors to the Debtor, including without limitation

any successor trustee or trustees, shall assign or direct to Capital any and all Proceeds

realized in any Disposition, and immediately deliver any and all such Proceeds which come

into their possession to Capital in the form received.  All such Proceeds shall be retained by

Capital and applied as set forth below, notwithstanding the provisions of Bankruptcy Code

§ 362.  No further order of the Court shall adversely affect the rights of Capital to receive the

Proceeds of any Disposition in accordance with the provisions of this paragraph or as

otherwise agreed to by Capital.  In furtherance of the foregoing, neither the Debtor nor the

Committee shall seek to cause the escrow of, enjoin Capital's receipt of, or otherwise

withhold from Capital any Proceeds of, any Disposition.  The foregoing is without prejudice

to the rights of (a) Capital, the Committee or any third party to object to any proposed

Disposition, or (b) any third party with respect to the allocated Proceeds of any Disposition

of Collateral encumbered by a Senior Third Party Lien.  Capital is hereby authorized to credit-bid all or any secured portion of the Obligations at any Disposition.

21.     All Proceeds retained by Capital pursuant to this Order shall be applied to the repayment of the Obligations, including without limitation interest accrued with respect thereto, until such are paid in full.  Such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code §§ 506(c).  Notwithstanding the foregoing, in the event that this Court should determine by final order, as the result of a Challenge or otherwise, that Capital was under-secured as of the Petition Date or that such application of Proceeds was improper or unduly advantaged Capital, then such applications of Proceeds shall be (1) deemed to have been applied first in reduction of the Post-Petition Claim and thereafter in reduction of the principal amount of Capital's pre-petition allowed secured claims, and (2) thereafter treated and/or recovered in such manner as may be required by such final order and/or as otherwise determined by the Court after notice to Capital and a hearing.

22.     Without prejudice to the rights of third parties to the extent set forth in the following paragraph of this Order:

(a)     the Admissions shall be binding upon the Debtor in all circumstances;

(b)     the validity, extent, priority, perfection, enforceability and non-avoidability of Capital's pre-petition claims against the Debtor and/or pre-petition Liens shall not be subject to challenge by the Debtor;

(c)     the Debtor shall not seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of Capital prior to the Petition Date; and

(d)     the Debtor hereby releases and waives all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest:

(1)     any Defaults or Events of Default (as defined in the Pre-Petition Agreements) which were or could have been declared by Capital as of the Petition Date;

(2)     any provisions of the Pre-Petition Agreements;

(3)     the amount of the Pre-Petition Obligations and/or the value of the Pre-Petition Collateral on the Petition Date; or

(4)     the conduct of Capital and its directors, officers, employees, agents, attorneys and other professionals (collectively, the "Capital Parties") in administering the pre-petition business relationship between the Debtor and Capital, including without limitation "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action.

Capital shall have no Carve-Out obligations to the Debtor or to any of the Debtor's Chapter 11 Professionals with respect to any investigation or litigation (whether threatened or pending) by the Debtor with respect to any matter released, waived or specified as not subject to challenge by the Debtor pursuant to this paragraph.  As used in this paragraph, "Debtor" shall include the Debtor's successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar

person appointed in a case for the Debtor under any chapter of the Bankruptcy Code, but shall not include the Committee.

23.     Notwithstanding the Debtor's release and waiver set forth in the preceding paragraph of this Order, the Committee shall have until September 30, 2014 at 5:00 p.m. Eastern Time (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of entry of this Order to commence an adversary proceeding against any of Capital Parties for the purpose (collectively, a "Challenge") of:

(a)     challenging the validity, extent, priority, perfection, enforceability and non-avoidability of Capital's pre-petition claims against the Debtor and/or Liens;

(b)     seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of Capital prior to the Petition Date; and/or

(c)     seeking damages or equitable relief against Capital arising from or related to the pre-petition business relationship between the Debtor and Capital, including without limitation "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action.

The Committee is hereby granted standing to commence a Challenge without further authorizing order of the Court, and the Debtor and Capital hereby each waive their right to object to the same.  Any other party in interest shall have 60 days (or a longer period for cause shown before the expiration of such period) from the date of entry of this Order to move this Court for an order granting it standing to commence a Challenge.  All parties in interest, including without limitation the Committee, that fail to act in accordance with the

time periods set forth in the preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge.

24.    The Capital Parties' legal and equitable claims, counterclaims, defenses and/or rights of offset and setoff in response to any such Challenge are reserved, and the ability of a party to commence a Challenge shall in no event revive, renew or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge.  Despite the commencement of a Challenge, Capital's pre-petition claims and Liens shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code § 502(d) and not subject to subordination under Bankruptcy Code § 510 until such time as a final and non-appealable judgment order and judgment entered sustaining such Challenge in favor of the plaintiffs therein.  Nothing contained herein shall limit the Court's ability to fashion an appropriate remedy should the Court determine, by entry of a final and non-appealable order and judgment, a Challenge in favor of the plaintiffs therein.  Capital shall have no Carve-Out obligations to any person or entity (including without limitation the Committee) or to any Professional of such person or entity with respect to any pending or commenced Challenge, but the Carve-Out may be used by the Committee to investigate any matter for which a Challenge may be properly commenced.

25.    This Order shall be binding upon and inure to the benefit of Capital, the Debtor, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. Except as set forth herein with respect to a Challenge and/or the Carve-Out, no rights are

created under this Order for the benefit of any creditor of the Debtor, any other party in

interest in the Debtor's bankruptcy case, or any other persons or entities, or any direct,

indirect or incidental beneficiaries thereof.

26.    The provisions of this Order and any actions taken pursuant hereto shall

survive entry of any orders which may be entered confirming any plan of reorganization or

which may be entered converting the Chapter 11 Case to a case under Chapter 7 of the

Bankruptcy Code.  The terms and provisions of this Order, as well as the Post-Petition

Claim and the Post-Petition Lien, shall continue in this or any superseding case under the

Bankruptcy Code, and shall continue notwithstanding any dismissal of the Debtor's

bankruptcy case, and such claims and Liens shall maintain their priority as provided by this

Order until the Obligations are irrevocably satisfied in full.  Except as otherwise provided in

this Order, no Proceeds, Cash Collateral or Carve-Out may be used by any party in interest

seeking to modify any of the rights granted to Capital without Capital's prior written

consent.

27.    To the extent that any of the provisions of this Order shall conflict with any of

the provisions of the Pre-Petition Agreements, this Order is deemed to control and shall

supersede the conflicting provision(s).  To the extent that any of the provisions of this Order

shall conflict with any order of the Court authorizing the Debtor to continue the use of pre-

petition bank accounts, cash management systems and/or business forms, or any similar

orders, then this Order is deemed to control and supersede the conflicting provision(s) in

said orders.

28.    The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the clerk of this Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise.

29.    Capital shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code §§ 363(m) and 364(e), with respect to all purchases of post-petition accounts, and loans, advances, and other financial accommodations, made by Capital pursuant to this Order.  Pursuant to the provisions of Bankruptcy Code §§ 363(m) and 364(e), the validity of all purchases of post-petition accounts, the Post-Petition Claim, and the Post-Petition Lien, shall be binding on the Debtor and any successor trustee or trustees even if this Order is reversed or modified on appeal.

30.      The Debtor and Capital may enter into waivers or consents with respect to

the Factoring Agreement without the need for further Court approval provided that (a) the

Factoring Agreement as so modified is not materially different from that existing as of the

Petition Date, (b) notice of all amendments is filed with the Court, and (c) notice of all

amendments (other than those that are ministerial or technical and do not adversely affect

the Debtor) are provided in advance to counsel for the Committee, all parties requesting

notice, and the United States Trustee.


Dated: New York, New York
          September 4, 2014                          _s/ Robert E. Gerber_____
                                                     HONORABLE ROBERT E. GERBER
                                                     UNITED STATES BANKRUPTCY JUDGE

9/3/2014

| | 9/1 - 9/7 | 9/8- 9 /14 | 9/15 - 9/21 | 9/22- 9/28 | 9/29 - 10/5 | 10/6 - 10/12 |
|---|---|---|---|---|---|---|
| Payroll accrued payroll | $10,769 | | $10,769 | | $10,769 | |
| Employee Expenses -travel,customer related expenses | | | | | | |
| Contractors- Wayne | $2,500 | | $2,600 | | $1,500 | |
| Rent | $14,099 | | | | $14,099 | |
| Equipment | | | | | | |
| Insurance | $2,002 | | | | $2,002 | |
| Domain Names | | | | | | |
| UPS  Madison | | | | | | |
| Shipping/Warehousing- Kenco | | | | | | |
| Freight | | | | | | |
| Invoicing/Order Processing -Madison | $4,000 | $4,000 | | | | |
| Internet/Phone Service | $2,987 | | | | $2,987 | |
| Garbage removal | $375 | | | | $375 | |
| Traub | | | $50,000 | | | $50,000 |
| Platzer | $20,000 | $20,000 | $20,000 | $20,000 | $15,000 | $15,000 |
| Trustee | | | | | | |
| Creditors Committee Atty | | | | | | |
| Utility Deposits | | | | | | |
| Misc. Expenses | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Total | $61,732 | $29,000 | $88,369 | $25,000 | $51,732 | $70,000 |

Assumptions

1
2
3
4
5
6
7
8
9
10